```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                      ASHEVILLE DIVISION
                      1:04CV59-MU-02
```

```
IRVIN DEMARCUS BURTS,        )
      Plaintiff,             )
                             )
        v.                   )
                             )
JOSHUA SLAGLE, Former        )
  Buncombe County Deten-     )
  tion Facility¹ employee)
JIM WALLING, BCDF em-        )
  ployee;                    )
LIEUTENANT RON RAY, BCDF     )       O R D E R
  employee;                  )
SERGEANT SUSAN LAMBERT,      )
  BCDF employee;             )
  Employee;                  )
DARRELL SAUCIER, BCDF em-    )
  ployee; and                )
JOSHUA RAYMENT, BCDF em-     )
  ployee,                    )
      Defendants.            )
_____ )
```

**THIS MATTER** comes before the Court on the plaintiff's Complaint under 42 U.S.C. §1983, filed April 2, 2004 (document # 1); on the defendants' Answers to the plaintiff's Complaint, filed November 30, 2004 and December 10, 2004 (documents ## 11 and 12); on the plaintiff's various Motions for Discovery, filed March 3, and May 4, 2005, and October 24, and November 6, 2006 (documents ## 19, 22, 25 and 26); on the defendants' Motion for Summary

---

[1] The Buncombe County Detention Facility hereafter will be referred to as the "BCDF."

Judgement, filed April 27, 2005 (document # 20); and on the plaintiff's Response to the defendants' Motion for Summary Judgment, filed May 9, 2005 (document # 24).

For the reasons stated herein, three of the plaintiff's Motions for Discovery will be <u>dismissed</u>, and the other will be <u>denied</u>; the defendants' Motion for Summary Judgment will be <u>granted</u>; and the plaintiff's Complaint will be <u>dismissed</u>.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court has gleaned its facts from the plaintiff's Complaint, his Declaration, his so-called "Answer To Summary Judgment, an Affidavit of Captain Glen Matayabus, and those portions of the defendants' Answers and Affidavits which the plaintiff does not deny.

A careful reading of the foregoing documents reflects that at the time of the incidents about which the plaintiff complains, he was a pre-trial detainee at the BCDF. Also at that time, the plaintiff was classified as a "management problem"; his inmate file contained numerous documents which indicated that he had institutional behavioral problems; and such documents further showed that he had been sanctioned for rules violations, including violent behavior toward officers and other inmates at the BCDF.

The record before the Court also reflects that on the morning of March 3, 2004, the plaintiff and six or seven other

detainees at the BCDF all were standing in a line, awaiting an opportunity to sign the Inmate Visitation list. The sign-up process was being supervised by defendant Walling. When the plaintiff, who was at the end of that line, learned that he could not sign-up for visitation during his preferred time slot, he became enraged. The plaintiff then threatened to destroy the list if he was not given his preferred time slot.

In response to the plaintiff's threat, defendant Walling advised that the sheet would not be destroyed, at which point the plaintiff began accosting the inmates who already had signed the sheet. Defendant Walling then ordered all of the inmates to return to their cells. The plaintiff was the only inmate who did not comply with that command. Walling repeatedly directed the plaintiff to return to his cell, but the plaintiff refused to comply. In one instance, the plaintiff told Walling that he would have to be "put" in his cell, presumably because he did not plan to go on his own volition.

In response to that statement, Walling called for assistance, and then locked back all of the other inmates. Upon hearing the call for assistance, defendants Slagle, Rayment and Saucier responded to Walling's unit. The plaintiff was again ordered to return to his cell. However, the plaintiff refused to comply, and instead told the officers that he was not going back to his cell and that they should not approach him. Defendant

Slagle gave one last command for the plaintiff to return to his cell, but the plaintiff responded with profanity and said he was not going back to his cell.

Slagle and the plaintiff next began to walk toward one another, and then Slagle reached for the plaintiff's upper arm in order to take him to his cell. However, the plaintiff struck Slagle's hand and attempted to strike Slagle a second time. The two men began to struggle until Slagle grabbed the plaintiff's arms and defendants Saucier and Rayment grabbed his legs while wrestling him to the ground. Once the plaintiff got to the ground, he withdrew his hands and tucked either one or both arms underneath his body. During the course of the struggle, the three officers repeatedly directed the plaintiff to place his hands behind his back so that he could be handcuffed, but the plaintiff refused to do so and instead kicked his legs at them.

Eventually, defendant Rayment applied finger-tip pressure to the plaintiff's jaw in an unsuccessful attempt to get him to release his hands. Next, Rayment and Saucier used their hands and knees to apply compliance strikes to various parts of the plaintiff's legs in order to gain control of his legs and feet. Defendant Slagle used his hands to apply compliance strikes to the plaintiff's arms and then placed him in a head-lock, all in an effort to handcuff the plaintiff. During the struggle, defendant Slagle also called the plaintiff a "nigger," and told

him that he hated him and always would hate him.[2]

By that point, defendants Lieutenant Ray and Sergeant Lambert had arrived in the area. Upon Ray's arrival, he repeatedly ordered the plaintiff to stop struggling and surrender his hands. Defendant Ray observed defendant Slagle strike the plaintiff in the chest, at which point Ray told Slagle "that's enough, Josh." At some point, defendant Ray delivered a thigh-strike to the plaintiff, but it yielded no results. However, once defendant Ray threatened to spray mace on the plaintiff, he stopped struggling and surrendered both of his hands.

Officer Lambert next gave defendant Rayment a pair of handcuffs which were placed on the plaintiff. Several officers then brought the plaintiff to his feet. However, once on his feet, the plaintiff kicked and spat on defendant Slagle, and then he wrapped his legs around Slagle in an effort to make Slagle fall. Slagle responded with two strikes to the plaintiff. Other officers then wrestled the plaintiff back onto the ground, at which point he said "I am going to mother fucking raise as much hell as I can while I am here." The plaintiff also threatened retaliation against the officers.

By that time, Major Stafford had arrived in the area and had

---

[2] Although the defendants' unverified Answers deny that Slagle used racial slurs against the plaintiff, none of their sworn Affidavits, including defendant Slagle's Affidavit, makes any such denial. Therefore, the Court will accept as true the plaintiff's verified allegation that Slagle used racial slurs against him.

5

promised the plaintiff that he would discuss the situation with him if the plaintiff would calm down and comply with the officers' commands. Once the plaintiff complied, he was brought to his feet and taken to a booking cell. The plaintiff then told Major Stafford and Captain Matayabus his version of the preceding incident. Major Stafford told the plaintiff that he would look into the incident, and then he and Captain Matayabus left the plaintiff in the holding cell.

Thereafter, Emergency Medical Technician Michael Hall assessed the plaintiff. Hall's evaluation revealed only a small abrasion behind one of the plaintiff's ears, and no other detectable injuries. Hall cleaned the wound and applied a bandage to it. On the following day, the plaintiff was seen for a sick-call visit with Nurse Practitioner Paul Moore. During that visit, the plaintiff complained of toe pain, pain on both sides of his chest, and right hip pain. Upon examination, Moore observed what appeared to be a bruise with tenderness and slight swelling on the right side of the plaintiff's chest and a toe strain, but no shortness of breath and no apparent distress. The plaintiff was given a prescription for 800mg strength Motrin, which medication could be taken up to three times per day for seven days.

Notwithstanding his purported outrage concerning this incident, the plaintiff admittedly did not even attempt to file any grievances against the defendants. In any case, the record

reflects that at some point after this incident, the plaintiff was transferred to another detention facility before he was convicted of certain unrelated crimes and sent to prison.

The record also establishes that an internal investigation was conducted at the BCDF, during which defendant Slagle was suspended without pay for two weeks. In the course of that suspension, on March 12, 2004, defendant Slagle tendered his resignation, and did not return to that job.

On April 2, 2004, the plaintiff filed this civil rights action, naming as defendants the Buncombe County Sheriff, Major Stafford and all of the officers who were present during his struggle with the officers. The plaintiff requests $50,000 from each defendant for their "damaging [his] body and for putting [him] through severe pain."

By an Order filed September 9, 2004, the undersigned dismissed from this action Sheriff Medford and Major Stafford, upon a determination that the plaintiff had failed to set forth an allegation or any facts which conceivably could state a claim against those defendants. The Court also dismissed the plaintiff's allegations of medical malpractice against any and all BCDF personnel. However, the Court allowed the plaintiff's claims to proceed against defendants Slagle, Walling, Ray, Lambert, Saucier and Rayment.

On November 30, 2004, defendants Walling, Ray, Lambert,

7

Saucier and Rayment filed an Answer. On December 10, 2004, defendant Slagle filed a separate Answer. Both Answers, however, deny that the plaintiff was singled out, assaulted and injured by the defendants. Instead, the defendants asserted that they resorted to the use of force against the plaintiff when he refused their lawful commands to return to his cell; and that such force caused the plaintiff no more than minor injuries.

On April 27, 2005, the defendants filed a "Motion for Summary Judgement." By that Motion, the defendants argue--quite convincingly, in fact--that the defendants legally were entitled to use force to control the plaintiff and to overcome his resistance to their lawful commands. The defendants further argue that the force which they used was measured and commensurate with the force necessary to achieve their goal of controlling the plaintiff and removing him from the area; and, in any event, that the plaintiff suffered only <u>de minimis</u> injuries as a result of that force. Consequently, the defendant's argue that the plaintiff has failed to state a constitutional claim for relief.

On the other hand, the plaintiff has not denied that he refused to comply with the defendants' lawful commands. Instead, the plaintiff's so-called "Answer To Summary Judgment rejoins, in a most conclusory manner, that the defendants were engaged in some type of "conspiracy"; and that they assaulted him in violation of his constitutional rights.

8

For its part, the Court has determined for itself that the plaintiff has failed credibly to rebut the defendants' evidentiary forecast which shows no unlawful assault and, in any case, only de minimis injuries.  Therefore, the defendants' Motion for Summary Judgment must be granted.

## II.  ANALYSIS

### 1.  Exhaustion of Administrative Remedies

At the outset the Court notes that the plaintiff did not file any grievances concerning the matters alleged in his Complaint.  Under 42 U.S.C. §1997e(a), prisoners confined in any jail, prison or other correctional facility are required to exhaust available administrative remedies before they can seek money damages in Court concerning allegations of constitutional violations.  Indeed, such requirement exists even where the available remedies "neither meet federal standards nor are plain, speedy, or effective."  Davis v. Stanford, 382 F.Supp. 2d 814, 818 (E.D. Va. 2004), citing Porter v. Nussle, 534 U.S. 516, 524 (2002) and Booth v. Churner, 532 U.S. 731, 739 (2001).

Here, as has been noted, the plaintiff admittedly did not file a grievance in connection with his allegations.  And, although he asserts that he did not pursue his administrative remedies because he was transferred to another facility, in the absence of any information concerning the time frame in which that transfer occurred, this Court simply cannot conclude that

9

the plaintiff was relieved of his duty to seek administrative remedies.

## 2. **Standard of Review for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant summary judgment when the pleadings and other relevant documents reveal that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc), cert. denied, 498 U.S. 1109 (1991).

A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment." Id. at 249-50. The response must be specific and based on more than mere allegations of error or the falsity of defendants' affidavits. Bloodgood v. Garraghty, 783 F.3d 470 (4th Cir. 1986). Moreover, a few isolated, disputed facts are not sufficient to establish a genuine issue of material fact to overcome the grant of summary judgment. Sibley v. Lu-

theran Hosp. Of Maryland, Inc., 871 F.2d 479 (4th Cir. 1989). To put it another way, although the court must draw all justifiable inferences in favor of the nonmoving party, in order to successfully defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in his pleadings." Doyle v. Sentry Ins., 877 F.Supp. 1002, 1005 (E.D. Va. 1995).

### 3. **Allegations against Walling, Lambert and Ray fail**

Notwithstanding the plaintiff's failure to exhaust his remedies, the Court also has concluded that defendants Walling and Lambert are entitled to summary dismissal from this action. To be sure, defendants Walling and Lambert did not physically touch the plaintiff. Walling merely called for assistance to address the plaintiff's refusal to return to his cell, and Lambert simply provided the handcuffs which were used to secure the plaintiff. In short, defendants Walling and Lambert cannot possibly be liable to the plaintiff for any reason.

In addition, there is no evidence that defendant Ray did anything more to the plaintiff than having delivered a single compliance strike to the plaintiff's thigh, and having threatened him with mace if he did not discontinue his resistant, combative behavior. On the uncontroverted facts of this case, such minimal use of force clearly does not run afoul of a pre-trial detainee's liberty interest, as secured by the Due Process Clause of the

11

Fourteenth Amendment, to be free from "the use of excessive force that amounts to punishment." Bell v. Wolfish, 441 U.S. 520, 535-39 (1979). Nor does that conduct "shock the conscience" so as to entitle the plaintiff to relief. See Rochin v. California, 342 U.S. 165, 172 (1952).

In other words, the plaintiff has failed to present an evidentiary forecast which could establish that defendant Ray "inflicted unnecessary and wanton pain and suffering," or that he applied the force which he used in a malicious and sadistic way for the very purpose of causing harm to the plaintiff. Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998) (granting summary judgment for officers against detainee's §1983 claim on the basis of de minimis injury where officers allegedly grabbed him by the collar, aimed a gun at him, threatened to "blow his brains out", threw him to the floor face first, jumped on his back, hit him in the back of the head, punched him in the ribs, kneed him in back, pulled his head backwards, and shoved a small baton into his nose and mouth, causing his nose to hemorrhage and a tooth to crack). Therefore, defendant Ray also will be dismissed from this action.

**4. Defendants Rayment, Saucier and Slagle are entitled to summary judgment**.

At the outset of the Court's analysis of these defendants' conduct, the undersigned is reminded that:

> [t]he management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may

12

> require and justify the occasional use of a
> degree of intentional force. Not every push
> or shove, even if it may later seem unneces-
> sary in the peace of a judge's chambers,
> violates a prisoner's constitutional rights.
> In determining whether the constitutional
> line has been crossed, a court must look to
> such factors as the need for the application
> of force, the relationship between the need
> and the amount of force that was used, the
> extent of injury inflicted, and whether force
> was applied in a good faith effort to main-
> tain and restore discipline or maliciously
> and sadistically for the very purpose of
> causing harm."

Johnson v. Glick, 481 F.2d 1028, 1034 (2nd Cir. 1973).

As for defendants Saucier and Rayment, the record shows that they each administered several compliance strikes to the plaintiff's legs, and Rayment pinched the plaintiff's jaw, all in an effort to subdue and take control of him. Further, the plaintiff does not deny that he was struggling with the defendants and resisting their commands during the incident. Nor does the plaintiff credibly[3] allege any facts which could support a finding that Saucier and/or Rayment's conduct was wanton, i.e., done maliciously and sadistically for the very purpose of causing him harm. See also Whitley v. Albers, 475 U.S. 312, 320-21 (1991) (holding that shooting inmate during prison riot did not violate Eighth Amendment's cruel and unusual punishment provision).

---

[3] In his Complaint, the plaintiff alleged that "[a]ll officers was [sic] White and agreed with Officer Slagal [sic] calling me a nigga [sic] . . . ." However, in the plaintiff's "Answer To Summary Judgment," he simply reports that he was "beat[en] by (5) five White Officers [and] one was stating racial remarks to encourage his fellow officers" (emphasis added).

13

Equally critically, the Court has determined that the evidentiary forecast establishes that the plaintiff suffered no more than de minimis injuries from this use of force. Therefore, in the absence of any additional extraordinary circumstances, defendants' Saucier and Rayment's Motion for Summary Judgment must be granted. See Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994) (noting that temporary swelling and irritation are precisely the types of injury that constitute de minimis injury).

Turning last to defendant Slagle's conduct--which is of greater concern to the Court--the plaintiff still has failed to forecast evidence which can establish a violation of his constitutional rights. On this record it is clear that Slagle and the other defendants were entitled to use force to return the plaintiff to his cell. Moreover, while it may appear in hindsight that the amount of force which defendant Slagle used was not absolutely necessary under the circumstances--inasmuch as one of Slagle's superior officers had to direct him to stop striking the plaintiff--the plaintiff still cannot establish a constitutional violation since the injuries which he suffered were de minimis.

To put it simply, the evidentiary forecast in this case reflects that the plaintiff repeatedly disregarded several lawful commands that he return to his cell; that he provoked a physical altercation with the officers; that force was used by the officers in order to take control of the plaintiff; that defendant

Slagle used racial slurs against the plaintiff during the course of their struggle; that at one point, defendant Slagle also used more force than was absolutely necessary to take control of the plaintiff; that defendant Slagle was appropriately disciplined for his behavior with a two-week, unpaid suspension; and, in any case, that the plaintiff suffered only minor injury from the defendants' use of force, i.e., a small abrasion behind one ear, a strained left fifth toe, and some bruising in his chest/torso areas.

Consequently, inasmuch as the U.S. Supreme Court has said that the infliction of pain in the course of a prison security measure does not amount to a constitutional violation "simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense," Whitley, 475 U.S. at 319, the plaintiff cannot prevail against defendant Slagle. In short, even when considering all of Slagle's conduct, the record establishes no more than de minimis injuries to the plaintiff. Therefore, defendant Slagle also is entitled to summary judgment. See also Riley v. Dorton, 115 F.3d 1159 (4th Cir. 1997) (pain caused from six hours in handcuffs, welt from slap in face, and emotional trauma from pen being inserted in nose while being threatened with having nose "rip[ped] . . . open" was de minimis).

15

Finally, with respect to the plaintiff's various Motions for Discovery, the Court has determined that those matters must be rejected. Indeed, by his first "Motion For Discover + All Records," the plaintiff asks for "all records the Courts may have to the above case number." By the plaintiff's third Motion for Discovery, he asks for "all findings facts and copies of the above case file that was filed by [him] under the 1983 form back in apx [sic] March of 2003." The plaintiff did not even hint at why he was requesting such documents. Suffice it to say, however, that since the plaintiff already was given copies of all of the documents which were filed by the defendants, he has not asserted that he no longer has a copy of his own filings, and he was given copies of all of the Court's Orders, these two requests should be <u>dismissed</u> as moot.

Similarly, by his fourth Motion for Discovery, the plaintiff requests that defendant Slagle's attorney provide him with "all finding facts & copies of the above file num.# (1:04cv59) that was filed by [plaintiff] under the 1983 form back in March of 2004, as soon as possible. As up to this dated, day (Tuesday October 31)." Again, however, the plaintiff did not indicate why he was requesting such materials, and defense counsel has no responsibility to give the plaintiff copies of documents which the plaintiff already should have in his possession. Therefore, this Motion also will be <u>dismissed</u> as moot.

16

By the plaintiff's other Motion for Discovery, he requests "[a]ll records from the Buncombe County Sheriff's Department from the investigation that was done by Internal Affairs, where Officer J. Slagle was suspended without pay for two weeks and never returned to work." Once again, the plaintiff did not even attempt to articulate why he believed he needed such records. Nor did the plaintiff bother to explain how such documents might relate to his claim. Consequently, that Motion will be <u>denied</u>.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The plaintiff's "Motion For Discover + All Records" (document # 19) is **DISMISSED as moot;**

2. The plaintiff's "2ND Motion For Discover + All Records" (document # 22) is **DISMISSED as moot;**

3. The plaintiff's "Motion For Discovery A.S.A.P." (Document # 25) is **DENIED;**

4. The plaintiff's "Motion Of Discovery" (document # 26) is **DISMISSED as moot;**

5. The defendants' Motion For Summary Judgement" (document # 20) is **GRANTED;** and

6. The plaintiff's Complaint (document # 1) is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: March 21, 2007

Graham C. Mullen
United States District Judge